**Dated: February 09, 2006**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CHARLES WESLEY CAIN and** | ) | Case No. 04-73131 |
| **RUBY G. CAIN a/k/a** | ) | Chapter 13 |
| **JEANIE CAIN** | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |
| **CHARLES WESLEY CAIN** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 04-7112 |
| | ) | |
| **AEGON STRUCTURED** | ) | |
| **SETTLEMENTS, ET AL.** | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

On the 13th day of December, 2005, the above-referenced adversary proceeding came on for trial.

Appearances were entered by Betty Williams, Attorney for Plaintiff, and Bruce Akerly and Linda Thai, Attorneys for Settlement Capital Corporation ("SCC"). After reviewing the evidence and testimony, this Court does hereby enter the following findings of facts and conclusions of law in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Plaintiff commenced this adversary on November 2, 2004. In the Pre-Trial Order entered December 9, 2005, the following stipulated facts are provided:

1. Charles Wesley Cain filed a Chapter 13 proceeding in the Eastern District of Oklahoma on August 19, 2004.

2. On or about August 6, 1987, Charles Wesley Cain on behalf of himself and others, entered into a settlement agreement with Wal-Mart Stores, Inc. whereby he settled a claim against Wal-Mart Stores, Inc. for the injury leading to the death of his mother, Dolly Luvina Cain.

3. Under the Settlement Agreement, Charles Wesley Cain is to receive monthly payments in the amount of $1,550.00 each, for twenty (20) years, guaranteed, and life thereafter, beginning on September 1, 1987, with such monthly payments compounding annually at four percent (4%).

4. In connection with the settlement agreement, Transamerica Occidental Life Insurance Company issued and funded the annuity contract, no. 871213.

5. In June 1998, the Plaintiff, Charles Wesley Cain, entered into and executed a Purchase and Sale Agreement with the Defendant Settlement Capital Corporation, dated effective as of June 10, 1998.

6. In connection with the June 1998 Purchase and Sale Agreement, Settlement Capital Corporation paid Charles Wesley Cain, and Charles Wesley Cain received, the cash sum of $31,244.00.

7. In August 1998, the Plaintiff, Charles Wesley Cain, entered into and executed a Purchase and Sale Agreement with the Defendant Settlement Capital Corporation, dated effective as of August 13, 1998.

8. In connection with the August 1998 Purchase and Sale Agreement, Settlement

Capital Corporation paid Charles Wesley Cain, and Charles Wesley Cain received, the cash sum of $21,412.00.

9. In June 1999, the Plaintiff, Charles Wesley Cain, entered into and executed a Purchase and Sale Agreement with the Defendant Settlement Capital Corporation, dated effective as of June 17, 1999.

10. In connection with the June 1999 Purchase and Sale Agreement, Settlement Capital Corporation paid Charles Wesley Cain, and Charles Wesley Cain received, the cash sum of $24,000.00.

11. In August 2000, the Plaintiff, Charles Wesley Cain, entered into and executed a Purchase and Sale Agreement with the Defendant Settlement Capital Corporation, dated effective as of August 2, 2000.

12. In connection with the August 2000 Purchase and Sale Agreement, Settlement Capital Corporation paid Charles Wesley Cain, and Charles Wesley Cain received, the cash sum of $27,071.00.

13. In January 2003, Charles Wesley Cain advised Aegon Structured Settlements to send the checks to his home address in Eufaula, Oklahoma.

14. In July 2004, Settlement Capital contacted Aegon Structured Settlements claiming an assignment and demanding payment to it, thereby causing the checks to be withheld from both parties.

15. On October 4, 2004, the Creditor Settlement Capital Corporation filed a proof of claim herein claiming to have a secured claim in the sum of $41,000. This claim became Claim #3 on the Claims Register.

16. On November 10, 2004, the Creditor Settlement Capital Corporation filed a proof of claim herein claiming to have a secured claim in the sum of $41,000. This claim became Claim #9 on the Claims Register.

17. A UCC-1 Financing Statement concerning the June 1998 Purchase Agreement was filed with the County Clerk of Oklahoma County, Oklahoma on July 17, 1998 and an extension of the UCC-1 Financing Statement was filed with the County Clerk of Oklahoma County, Oklahoma on April 22, 2004.

18. A UCC-1 Financing Statement concerning the August 1998 Purchase Agreement was filed with the County Clerk of Oklahoma County, Oklahoma on September

21, 1998 and an extension of the UCC-1 Financing Statement was filed with the County Clerk of Oklahoma County, Oklahoma on April 22, 2004.

19. A UCC-1 Financing Statement concerning the June 1999 Purchase Agreement was filed with the County Clerk of Oklahoma County, Oklahoma on June 21, 1999 and an extension of the UCC-1 Financing Statement was filed with the County Clerk of Oklahoma County, Oklahoma on April 22, 2004.

20. A UCC-1 Financing Statement concerning the August 2000 Purchase Agreement was filed with the County Clerk of Oklahoma County, Oklahoma on August 10, 2000. An extension of the UCC-1 Financing Statement was filed with the County Clerk of Oklahoma County, Oklahoma on May 5, 2005.

21. Debtors Charles Wesley Cain and Ruby Gene Cain are currently residents of the State of Texas.

22. At the time of the transactions at issue and at the time the bankruptcy as styled and referenced above was filed, Debtors Charles Wesley Cain and Ruby Gene Cain were residents of the State of Oklahoma.

23. SCC is a Texas corporation with its principal place of business located in Dallas, Texas.

24. Transamerica Annuity Service Corporation is the owner of the Annuity Contract.

25. Charles Wesley Cain has rights to receive the Annuity Payments under the Annuity Contract.

26. Charles Wesley Cain executed irrevocable Durable Powers of Attorney in connection with each of the four Purchase and Sale Agreements.

27. Charles Wesley Cain executed General Warranty Bills of Sale in connection with each of the four Purchase and Sale Agreements.

28. Charles Wesley Cain executed Rate Disclosure Statements in connection with each of the four Purchase and Sale Agreements.

29. Charles Wesley Cain executed Broker Statements in connection with the first three Purchase and Sale Agreements.

30. Charles Wesley Cain granted a security interest in the payments due under the

4

Case 04-07112   Doc 137   Filed 02/10/06   Entered 02/10/06 09:26:26   Desc Main
Document      Page 4 of 17

Settlement Agreement and/or Annuity Contract to Settlement Capital Corporation.

31. Charles Wesley Cain executed two Servicing Agreements and Collection Instructions, dated July 17, 1999 and August 2, 2000.

32. Charles Wesley Cain directly received the full amount of the payments due under the Settlement Agreement and/or Annuity contract from January 2003 through and including July 2004.

33. Settlement Capital Corporation has not received and continues to not receive the payments due under the Purchase and Sale Agreements since January 2003.

34. Transamerica Annuity Service Corporation and Transamerica Occidental Life Insurance Company has deposited and continues to deposit all monthly payments under the Annuity Contract, including the payments held from August 2004, with the United States Bankruptcy Court Clerk for the Eastern District of Oklahoma.

35. The full amount of the payment due under the Annuity Contract at the time of trial of this action is $3,019.24 per month.

36. On August 26, 2004, Debtors Charles Wesley Cain and Ruby Gene Cain filed their Schedules, Statement of Financial Affairs, and Chapter 13 Plan Number (1).

37. Debtors Charles Wesley Cain and Ruby Gene Cain amended their Schedules B and C on October 14, 2004.

38. Debtors Charles Wesley Cain and Ruby Gene Cain's Schedules and Chapter 13 Plan Number (1) identify Settlement Capital Corporation as an unsecured creditor with a claim in the amount of $116,850.00.

39. Debtors Charles Wesley Cain and Ruby Gene Cain objected to Settlement Capital Corporation's Proof of Claim and Amended Proof of Claim on December 9, 2004.

40. On September 29, 2004, Settlement Capital Corporation objected to confirmation of Debtors Charles Wesley Cain and Ruby Gene Cain's Chapter 13 Plan Number (1).

41. On November 5, 2004, Settlement Capital Corporation also objected to Debtors Charles Wesley Cain and Ruby Gene Cain's claimed exemptions on their Schedule C and any amendments thereto.

42. Charles Wesley Cain filed this adversary action for a turnover order on November 2, 2004.

43. By Amended Order entered on December 30, 2004, the Court consolidated Debtors Charles Wesley Cain and Ruby Gene Cain's objections to Settlement Capital Corporation's Proofs of Claim and Settlement Capital Corporation's objections to Debtors Charles Wesley Cain and Ruby Gene Cain's claimed exemptions on their Schedule C, and any amendments thereto, and objection to confirmation of Debtors' Chapter 13 Plan Number (1) with the Adversary.

The trial was conducted only on the counterclaim of SCC against Plaintiff in which SCC claims to be the owner of the payments from Transamerica Annuity Service Corporation and Transamerica Occidental Life Insurance Company ("Transamerica") to Plaintiff pursuant to the four Purchase and Sale Agreements. SCC seeks declaratory relief of its ownership of the payments under 11 U.S.C. § 105 and 28 U.S.C. § 2201. SCC also seeks damages, alleging breach of contract and unjust enrichment. SCC also seeks a judgment for fraud against Plaintiff pursuant to 11 U.S.C. § 523(a)(2)(A) and a determination that SCC is the secured creditor upon all proceeds paid by Transamerica pursuant to 11 U.S.C. § 506.

Plaintiff denies the allegations and asserts the affirmative defenses of usury; inequity of bargaining power; failure to properly disclose consequences and terms of the Agreements to the Plaintiff; Agreements are in violation of Texas law as it existed at the time of the Agreements; and the Agreements were against public policy.

Plaintiff testified at trial that when he first initiated contact with the broker who set up the transactions with SCC, Plaintiff was in need of cash. Plaintiff stated that he spoke with the broker about his inability to sell the payments and also advised someone with SCC of the same. Plaintiff further testified that he later contacted Transamerica in order to direct the payments to himself on the advice of his former

6

bankruptcy attorney.

Choice of Law:

First, this Court will determine what state's law governs the different agreements at issue in this matter. The general rule is that federal courts determine which state's law applies by referring to the choice of law principles that exist in the state in which the federal court sits. *Dang v. UNUM Life Ins. Co.,* 175 F.3d 1186, 1190 (10th Cir. 1999). Unless the contract contains a choice of law provision, under Oklahoma law "a contract is to be interpreted according to the law and usage of the place where it is to be performed, or if it does not indicate a place of performance, according to the law of the place it was made." *Id.; see also* Okla. Stat. Ann. tit. 15, § 162 (West 2001).

First, this Court will look at the Settlement Agreement. The parties do not dispute that the Settlement Agreement should be interpreted under Oklahoma law. This Court agrees. The Settlement Agreement was made in Oklahoma, settling the case out of Creek County, Oklahoma, which arose from the claim against Wal-Mart Stores, Inc. for the injury leading to the death of Plaintiff's mother.

Next, this Court will examine the Annuity Agreement. The Annuity Agreement does not contain a choice of law provision. Plaintiff contends that California law should apply to the Annuity Agreement because the payments are defined as being made by a California insurance company. Plaintiff further states that Transamerica's principal place of business is located in California. Upon studying the Annuity Agreement, there is no indication that the principal place of business of Transamerica is California, nor that California law should apply. Transamerica's Answer contains admissions that Transamerica Annuity is a New Mexico corporation and Transamerica Life is an Iowa corporation. The payments under the Annuity Agreement were to be sent to Plaintiff in Oklahoma, and were honored by Plaintiff's bank in Oklahoma.

7

Accordingly, this Court finds that Oklahoma law should apply to the Annuity Agreement.

Next, this Court will examine the Purchase Agreements. Plaintiff contends that the Purchase Agreements contain a choice of law provision that provides for Texas law to be applied to the Purchase Agreements. SCC argues that the four Purchase Agreements do not contain a choice of law provision, but merely a venue provision stating that the venue of choice is Texas courts. The Purchase Agreements provide in part the following:

> Section 10.2. <u>Venue</u>. The parties hereto agree that their obligations under this Agreement and the Closing Documents are performable, in whole or in part, in Dallas County, Texas and that Dallas County, Texas is a proper place of venue to bring any cause of action arising out of a breach of this Agreement or any other Closing Document. The parties hereto waive the right to be sued elsewhere and agree and consent to the jurisdiction of any court of competent jurisdiction located in Dallas County, Texas.

This Court agrees with SCC. The Purchase Agreements do not contain a choice of law provision, merely a venue provision. Although the provision states that the obligations under the Agreement are performable in whole or in part in Dallas County, Texas, this Court finds that the obligation of Plaintiff under the Agreement was performed in Oklahoma. The Purchase Agreements were executed by Plaintiff in Oklahoma, and therefore the Purchase Agreements should be construed according to Oklahoma law.

<u>Declaratory Relief</u>:

SCC seeks declaratory relief of its ownership and entitlement to the assigned payments. Plaintiff contends that the Settlement and Annuity Agreements restricts his ability to assign the Annuity Payments to SCC. The Settlement Agreement provides in part:

> 6.  It is expressly understood and agreed that none of the recipients of the <u>FUTURE PAYMENTS</u> provided for herein shall have the right to:
> (a) accelerate said future payments to any time or vary in any respects the payments;

8

> (b) receive the present discounted value of future payments;
> (c) have any control of the investments of funds from which payments are made;
> (d) have any right to increase or decrease the monthly payments;
> (e) change or modify the manner, mode or method of meeting any payments or discharging any obligations set forth in this agreement.

The Annuity Agreement provides, in part:

> **Owner** Transamerica Annuity Service Corporation
>
> **Annuity Payments -** Transamerica Occidental Life Insurance Company will pay the policy owner, or such person(s) as the policy owner may designate, subject to the provisions of this and the following pages which are made a part of this policy, according to the attached Schedule of Benefits.
>
> ***
>
> **Change of Designation -** The owner has the right at any time to designate to whom annuity payments will be made. A change of designation may only be made by filing a satisfactory written notice with the Company. A change of designation will not be effective until recorded at the Home Office of the Company. The change of designation will take effect on the date the notice was signed. Any payment made before the Company records a change of designation will not be subject to the change.
>
> **Who is Authorized to Make Changes in the Policy -** Only the Company's President or a Vice President, together with a Secretary or an Assistant Secretary have the authority to bind the Company to make any change in this policy and then only in writing. The Company will not be bound by any promise or representation made by or to any other persons.

The Settlement and Annuity Agreements contain no language limiting Plaintiff's power to sell, transfer or assign his rights in the Annuity Payments. The Supreme Court of Oklahoma has ruled that where an "anti-assignment provision is clear and unambiguous in its limitation of the power of the annuitant to sell mortgage, encumber, or anticipate future payments, by assignment or otherwise, the restriction on alienability is valid. *In re Kaufman,* 37 P.3d 845, 847 (Okla. 2001). The Settlement Agreement in *Kaufman* included a

9

Case 04-07112    Doc 137    Filed 02/10/06    Entered 02/10/06 09:26:26    Desc Main
Document    Page 9 of 17

provision restricting the payee's "power to sell, mortgage, encumber, or anticipate the future payments, or any part thereof by assignment or otherwise." The court in *Kaufman* focused on this provision in reaching its decision. *Id.* at 848. A similar provision is not contained in either the Settlement Agreement or the Annuity Agreement in the present case before this Court. The court in *Kaufman* further concluded that although an anti-assignment provision is valid, "well settled principles of Oklahoma law prevent an assignor from enforcing the clause against its assignee." *Id.* at 847. Furthermore, neither Plaintiff nor SCC would expect California law to apply to the transactions between them. This Court finds that the Agreements at issue do not contain anti-assignment clauses, and even if they did, Oklahoma law dictates that an assignor may not invoke the clause against its assignee.[1]

The Purchase Agreements clearly and unambiguously provide for the sale of a portion of the Annuity Payments to SCC. The four Purchase Agreements are titled "<u>Purchase and Sale Agreement</u>" and contain the following language:

> Section 1.1. <u>Purchase and Sale</u>. Subject to each of the terms, conditions, provisions and limitations contained in this Agreement, Seller agrees to sell, assign, transfer, convey and deliver to Purchaser at Closing (as hereinafter defined), by instruments satisfactory to Purchaser and its counsel, all of Seller's right, title and interest in and to the Periodic Payments, and Purchaser agrees to purchase and acquire from Seller all of Seller's right, title and interest in and to the Periodic Payments and to pay the Purchase Price (as hereinafter defined) to Seller at Closing.

Accordingly, the Court finds that SCC owns and is entitled to receive and collect the Assigned Payments.

<u>Breach of Purchase Agreements</u>:

---

[1] This Court notes that Texas law also dictates that an assignor may not later invoke an anti-assignment clause against its assignee. *See Johnson v. Structured Asset Serviced, L.L.C.,* 148 S.W.3d 711 (Tex. App. - Dallas 2004).

10

SCC contends that Plaintiff breached the Purchase Agreements, stating that Plaintiff had an obligation to instruct Transamerica to deliver the Annuity Payments, including the Assigned Payments directly to SCC so that SCC could service the payments. SCC further argues that Plaintiff warranted and represented to SCC that he would ensure the Assigned Payments were delivered to SCC and return to SCC any payments made to him by mistake or otherwise. SCC alleges that it has been damaged as a result of such breaches in the amount of all payments diverted to the present date. Plaintiff's only argument is that he cannot breach an invalid agreement, asserting that the Purchase Agreements are void under California law or against public policy in Texas. This Court rejects Plaintiff's argument, as Oklahoma law applies to the Agreements at issue, and the Agreements are valid.

It is undisputed that Plaintiff contacted Transamerica and requested that the Annuity Payments be sent directly to him. This was after he had agreed to assign the stream of payments to SCC. Plaintiff used the payments for his personal benefit. Section 4.1 of the Purchase Agreements provides that Plaintiff shall cooperate with SCC and take all action necessary to provide SCC the benefits of the bargain obtained under the agreement, including delivering to SCC any checks that were sent to Plaintiff. Plaintiff guaranteed the timely performance of all his obligations under the Purchase Agreements. As a result of Plaintiff's actions, SCC was denied the benefit of receiving the Assigned Payments under the Purchase Agreements. This Court finds that Plaintiff did breach the Purchase Agreements, and has suffered damages in the amount of all payments diverted to the present date.

SCC shall submit an affidavit of attorney fees and costs, with legal authorities on its entitlement to attorney fees, within fifteen (15) days of the entry of this Order. Plaintiff shall thereafter have ten (10) days to respond. The Court will set the matter for further hearing on entitlement and right to recover fees.

Unjust Enrichment:

SCC claims that when Plaintiff diverted the Annuity Payments to himself, he received monies that did not rightfully belong to him and as a result, was unjustly enriched.

Where the movant has an adequate remedy at law, the court will not usually exercise its equitable jurisdiction to grant relief for unjust enrichment. *Hydro Turf, Inc. v. International Fidelity Ins. Co.,* 91 P.3d 667, 673 (Okla. Ct. App. 2004). SCC has other adequate legal remedies and, therefore, this Court will decline ruling in SCC's favor on its unjust enrichment claim.

Dischargeability of Debt Pursuant to 11 U.S.C. § 523:

SCC contends that because Plaintiff was aware that he had transferred his rights to the Annuity Payments to SCC and then diverted the payments to himself, Plaintiff's obligations to SCC should be held non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). In order to prevail under this section a creditor must prove the following elements by a preponderance of the evidence:

> The debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss.

12

*Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996).[2] After examining Plaintiff's testimony and the evidence in this case, this Court finds that SCC cannot prevail under 11 U.S.C. § 523(a)(2)(A). Plaintiff testified that he diverted the payments to himself only upon the advice of his attorney, several years after the Purchase Agreements were executed. SCC failed to demonstrate any fraudulent intent or actual fraud on behalf of the Plaintiff.

SCC's Security Interest:

Plaintiff asserts that SCC cannot be both an owner of the Annuity Payments and hold a security interest in the payments. Plaintiff further asserts that SCC did not properly perfect its security interest with respect to the first two Purchase Agreements and must be treated as an unsecured creditor for those first two transactions. SCC argues that it owns the Assigned Payments and holds a security interest in the remainder of the Annuity Payments.

Section 4.6 of Purchase Agreements grants a security interest in the Annuity Payments, providing for a "FIRST PRIORITY SECURITY INTEREST IN ALL OF THE RIGHTS, TITLE AND INTEREST OF SELLER IN OR TO ALL OF THE FOLLOWING...: (i) all of Seller's right, title and interest in any and all money due or to become due under the Settlement Agreement and/or the Annuity."

In order for SCC's security interest to be enforceable against Plaintiff the following elements must exist: (1) value has been given; (2) the Plaintiff has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the Plaintiff has authenticated a security agreement that provides

---

[2]The United States Supreme Court has established that only "justifiable reliance" upon a false representation is required to sustain a non-dischargeability claim under Section 523(a)(2)(A). *See Field v. Mans,* 516 U.S. 59, 69 (1995).

13

a description of the collateral. Okla. Stat. Ann. tit. 12A, § 1-9-203 (West Supp. 2002). This Court finds that these elements have been met and SCC was granted a security interest in the Annuity Payments, not including the Assigned Payments.

Now this Court must examine whether SCC properly perfected its security interest with respect to the first two Purchase Agreements. SCC filed financing statements with the County Clerk of Oklahoma County on each transaction. However, on the first two transactions, SCC failed to timely file extensions. Plaintiff asserts that SCC's claims under the first two Purchase Agreements should be treated as unsecured. SCC argues that perfection of a security interest merely determines the priority in which each creditor's claim is paid, and since no other creditors were granted security interests in the Annuity Payments, SCC's security interest with respect to the first two Purchase Agreements continued when it filed the extensions late.

Okla. Stat. Ann. tit. 12A, § 1-9-515 (West Supp. 2002) provides for the effect of a lapsed financing statement as follows:

> (c) The effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed pursuant to subsection (d) of this section. Upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected...

This Court must therefore find that SCC's security interest lapsed when it failed to timely file a continuation statement, and as a result, SCC's claims in the Annuity Payments, not including the Assigned Payments, under the first two Purchase Agreements should be treated as unsecured claims.

Debtors object to SCC's proofs of claim, although at trial counsel for SCC stated that the second proof of claim is an amended claim that includes attorneys' fees, interest and costs in addition to SCC's

14

claim for $41,000.00. On December 16, 2005, SCC filed a Notice of Clarification Regarding Settlement Capital Corporation's Proofs of Claim, which provides that SCC's pre-petition claim is represented only by the amount shown in the Amended Claim. Debtors' Objections to SCC's Proofs of Claim are therefore overruled to the extent they are moot due to the filing of SCC's Notice of Clarification, and to the extent SCC holds a perfected security interest relating to the third and fourth Purchase Agreements.

Exemption:

Debtors claim an exemption in the Annuity Payments, and SCC objects to their claim of exemption. Debtors assert that Oklahoma law permits them to exempt the Annuity Payments due prior to filing bankruptcy as well as the first $50,000.00 of the Payments following the filing of bankruptcy. Debtors cite to Okla. Stat. tit. 31, § 1(A)(21) and case law in support of their assertion. SCC objects, stating that Debtors cannot claim an exemption to property that does not belong to them. SCC cites to *In re Carbaugh*, 278 B.R. 512 (10th Cir. BAP 2002) (holding that exemptions may only be claimed for property that is property of the estate). Having found above that SCC owns the Assigned Payments, this Court grants SCC's Objection to Debtors' Claimed Exemptions to the extent SCC owns the payments.

Plan Confirmation:

SCC argues that the Debtors' Chapter 13 Plan should not be confirmed because the Plan fails to mention SCC's ownership of the Assigned Payments and its status as a secured creditor of the Annuity Payments. SCC also objects to the Plan on the basis that it is unclear whether the $50.00 per month payment includes any portion of the Annuity Payments, including the Assigned Payments. In light of the findings above, this Court finds that the Confirmation of Debtors' Chapter 13 Plan should be denied. Debtors shall have fifteen (15) days to file an Amended Chapter 13 Plan and Summary.

15

Plaintiff's Defenses:

This Court rejects Plaintiff's asserted affirmative defenses. Plaintiff's assertion that the transactions between him and SCC are against public policy in Texas are not supported by law, and further, this Court found Oklahoma law to apply to the Purchase Agreements. Plaintiff's usury defense also fails, as the transactions between SCC and Plaintiff were not loans, rather they were sales. *Redman Indus., Inc.,* 613 S.W.2d 787, 789 (Tex. Civ. App. –Houston [14th Dist.] 1981, writ ref'd n.r.e.) (citation omitted).

This Court also rejects Plaintiff's defenses of inequity of bargaining power and failure to properly disclose consequences and terms of the agreement. Plaintiff sought out the broker and Plaintiff in fact initiated all four transactions. Plaintiff chose not to retain counsel or obtain legal advice in relation to these transactions. There is no evidence that SCC attempted to coerce or force Plaintiff to execute the Purchase Agreements. Plaintiff initialed every page of the Purchase Agreements and signed the documents, indicating that he read each one. Accordingly, this Court rejects Plaintiff's asserted defenses.

IT IS THEREFORE ORDERED that SCC is granted declaratory relief in that SCC is declared the rightful owner of the Assigned Payments which were due and/or remain due and owing to it pursuant to the Purchase Agreements.

IT IS FURTHER ORDERED that SCC's counterclaim for breach of the Purchase Agreements is **granted**. SCC shall file submit an affidavit of attorney fees and costs, with legal authorities on its entitlement to attorney fees, within fifteen (15) days of the entry of this Order relating to Plaintiff's breach of the Purchase Agreements. Plaintiff shall thereafter have ten (10) days to respond. The Court will set the matter for further hearing after the pleadings have been filed with the Court.

IT IS FURTHER ORDERED that SCC's counterclaim for unjust enrichment is **denied**.

16

IT IS FURTHER ORDERED that SCC's counterclaim for non-dischargeability of the debt owed to it by the Plaintiff pursuant to 11 U.S.C. § 523 is **denied.**

IT IS FURTHER ORDERED that SCC has a perfected security interest in Plaintiff's rights to receive the Annuity Payments, not including the Assigned Payments, pursuant to the third and fourth Purchase Agreements.

IT IS FURTHER ORDERED that the Debtors' Objections to SCC's Proofs of Claim are **overruled** to the extent they are **moot** due to the filing of SCC's Notice of Clarification, and to the extent SCC holds a perfected security interest relating to the third and fourth Purchase Agreements.

IT IS FURTHER ORDERED that SCC's Objection to Debtors' Claimed Exemptions is **sustained** to the extent the payments are owned by SCC.

IT IS FURTHER ORDERED that confirmation of the Debtors' Chapter 13 Plan Number (1) is **denied.** Debtors shall have fifteen (15) days from the entry of this Order to file an Amended Chapter 13 Plan and Summary.

IT IS FURTHER ORDERED that the Annuity Payments which have been held by the registry of the Court are to be paid to SCC and Transamerica shall continue to pay SCC all future Annuity Payments.

###

17